# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

BRAND NEW ENTERTAINMENT, LLC

*Plaintiff,*

v.

VIVICA A. FOX and
SHEILE LEGETTE, individually and doing business as
SHEILA LEGETTE ENTERTAINMENT,

*Defendants.*

## JURY TRIAL DEMANDED

## PLAINTIFF'S COMPLAINT

1.  Brand New Entertainment LLC ("Plaintiff") files this complaint against Vivica A. Fox ("Fox"), Sheila Legette, and Sheila Legette Entertainment ("collectively Legette") and states the following in support thereof:

### INTRODUCTION

2.  This action arises from Defendants' material breach of a written Booking Agreement for Defendant Vivica A. Fox's acting services,

1

negotiated through her agent, Defendant Sheila Legette. Despite receiving $32,500 as a deposit in partial compensation, Defendants failed to perform, misrepresented their intentions, and unjustly retained Plaintiff's funds, causing substantial financial, rendered clients project unsuccessful, professional and reputational harm.

## PARTIES

3. Plaintiff Brand New Entertainment LLC is a New York limited liability company, with its principal place of business at 26 Broadway, Suite 934, New York, NY 10004. For purposes of diversity jurisdiction, Plaintiff is a citizen of New York, as all of its members are citizens of New York.

4. Defendant Vivica A. Fox is an individual, a professional entertainer and actress, with a business address at 20555 Devonshire Blvd., Suite 321, Chatsworth, CA 91311. Upon information and belief, Defendant Fox is a citizen of California.

5. Defendant Sheila Legette ("Legette") is an individual residing in California, who at all relevant times conducted business under the unregistered trade name "Sheila Legette Entertainment." Upon information and belief, "Sheila Legette Entertainment" is not a registered legal entity in New York, California, or South Carolina but is instead a d/b/a used by

Defendant to transact business. Upon information and belief, Defendant Legette is a citizen of California.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      The compensatory damages sought are $32,500, and when combined with consequential damages (including lost production costs, disruption of filming schedule, reputational harm, and lost business opportunities) and punitive damages, the total amount in controversy exceeds $75,000.

8.      This Court has personal jurisdiction over Defendants pursuant to the Booking Agreement at issue, which expressly provides that it shall be governed by and construed in accordance with the laws of the State of New York, and that any disputes arising therefrom shall be subject to the exclusive jurisdiction of the courts located in New York.

(Exhibit A) Defendants have consented to jurisdiction in New York through

3

this provision and by purposefully availing themselves of the benefits of conducting business with a New York based entity.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff maintains its principal place of business in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and the Booking Agreement designates New York as the forum for disputes.

## STATEMENT OF FACTS

10. On or about September 6, 2024, Plaintiff Brand New Entertainment LLC ("Plaintiff") entered into a written Booking Agreement ("Agreement") with Defendant Vivica A. Fox ("Fox"), who was at all relevant times represented by her manager and agent, Defendant Sheila Legette, individually and doing business as Sheila Legette Entertainment ("Legette").

11. The Agreement concerned Fox's participation in Plaintiff's motion picture project entitled *The Return of Omotara Johnson scheduled* to be shot in Nigeria.

12. The parties agreed to a payment structure in which a payment of $25,000 was to be made upon execution of the Agreement, after which Fox was required to provide a video confirming her participation in the film and expressing her excitement about traveling to Nigeria.

13. A second payment of $25,000 was to be made prior to her departure from the United States for filming in Nigeria, and The final payment of $25,000 was to be made upon completion of filming in Nigeria.

14. The Agreement also provided that a 10% agency fee ($7,500.00), representing 10% of Fox's total compensation, would be paid to Defendant Legette for her role in representing Fox and negotiating the Agreement.

15. In reliance upon these terms, Plaintiff paid the initial $25,000 installment to Fox's designated account upon signing the Agreement and $7,500 agency fee to Sheila Legette, individually and doing business as Sheila Legette Entertainment ("Legette").

16. Fox failed to deliver the video confirmation as required under the Agreement, despite having received the initial installment of $25,000.

17. This failure constituted a material breach, as the video was a critical component of the parties' agreement and essential to Plaintiff's efforts to promote the film, secure investor confidence, and advance pre-production commitments.

18. Despite Plaintiff's repeated good-faith efforts to resolve the matter, including agreeing to accommodate a rescheduled filming in the United States, Defendants once again failed to perform.

19. Vivica Fox did not appear for filming at any time, either in Nigeria as originally agreed or in the United States as later proposed.

20. At all times relevant, Legette acted as Vivica Fox's authorized representative and manager.

21. Legette directly negotiated the Agreement, transmitted Fox's contractual requirements to Plaintiff, and confirmed both the payment terms and receipt of funds on Fox's behalf.

22. Notwithstanding their complete failure to render any services and their breach of the Agreement at its inception, Defendants have retained

6

the initial $25,000 payment and have refused to return the funds.

23.    Defendant Legette, despite having arranged no services, provided no deliverables, and facilitated no performance under the Agreement, nonetheless, retained the agency fee of $7,500.

24.    Both Defendants have categorically refused to issue any refund for their nonperformance, thereby unjustly enriching themselves at Plaintiff's expense.

25.    By reason of Defendants' conduct, Plaintiff has suffered direct monetary damages in the amount of Two Hundred and Fifty Thousand Dollars ($250,000).

26.    The direct monetary damages comprising the $25,000 payment made to Defendant Fox and the $7,500 agency fee paid to Defendant Legette, together with additional consequential damages, including, but not limited to, the cancellation and disruption of its film production schedule, loss of professional opportunities, and reputational harm within the entertainment industry.

27. These consequential damages, when aggregated with the direct damages and punitive damages sought, exceed $75,000.

## CAUSES OF ACTION

**First Cause of Action: Breach of Contract (Against Defendant Vivica A. Fox)**

28. Plaintiff repeats and realleges all paragraphs as if fully set forth herein.

29. Plaintiff respectfully submits that Defendant Vivica A. Fox is liable for breach of contract. To state a claim for breach of contract under New York law, a plaintiff must demonstrate:
 (1) the existence of a valid contract,
(2) the plaintiff's full performance,
(3) the defendant's material breach, and
 (4) damages approximately caused by that breach. Each of these elements is met here;

30. On or about September 6, 2024, Plaintiff and Defendant Fox entered into a valid and enforceable Booking Agreement whereby Fox undertook to render acting services in connection with Plaintiff's film project, *The Return of Omotara Johnson*.

31.  In consideration of Fox's performance, Plaintiff tendered the first agreed compensation in the total amount of Twenty-Five Thousand Dollars ($25,000.00). (Exhibit B)

32.  Defendant Fox materially breached the Agreement by failing to perform essential contractual obligations.

33.  Following receipt of the initial $25,000 payment, Fox failed to deliver the required video confirming her participation in the project, a condition precedent to further performance.

34.  Fox subsequently failed to travel to Nigeria and did not appear for the scheduled filming on September 18 and 19, 2024.

35.  In a further act of nonperformance, Defendant Fox failed to participate in a rescheduled shoot in the United States, which Plaintiff agreed to accommodate in good faith.

36.  As a direct and foreseeable consequence of Defendant's material breach, Plaintiff has sustained significant damages, including the $25,000 paid directly to Fox, along with consequential losses arising from the cancellation of filming, disruption of the production schedule, reputational harm, and lost business opportunities exceeding $75,000 in aggregate.

37.  A total of $250,000 was raised by investors for the project.

38. A valid and enforceable contract existed, and Plaintiff performed its obligations to the extent required by tendering the initial installment.

39. Fox's failure to provide the required video and refusal to perform excused Plaintiff from further obligations.

40. Accordingly, Plaintiff has properly pleaded a cause of action for breach of contract.

**Second Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing (Against Defendant Vivica A. Fox)**

41. Plaintiff repeats and re-alleges the allegations set forth above as though fully stated herein.

42. Under New York law, every contract carries with it an implied covenant of good faith and fair dealing, which obligates each party to act in a manner that preserves the other party's right to receive the fruits of the agreement.

43. This covenant prohibits a contracting party from engaging in conduct that, while not expressly forbidden by the contract's terms, nonetheless has the effect of destroying or injuring the other party's contractual rights and expectations.

44. Defendant Fox breached the implied covenant of good faith and fair dealing by deliberately refusing to perform her contractual obligations after

10

receiving the initial $25,000 installment, which triggered her performance obligations under the Agreement.

45. Despite accepting payment, Fox failed to provide the required video confirmation and subsequently refused to appear for filming in both Nigeria and the United States.

46. Her conduct, marked by nonperformance and misrepresentations regarding her willingness to reschedule, was calculated to deprive Plaintiff of the benefit of the bargain and to frustrate the essential purpose project.

47. Agreement, constituting a clear violation of the implied covenant under New York law.

48. As a direct and proximate result of Defendant Fox's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered substantial damages worth Two Hundred and fifty Thousand Dollars ($250,000), including but not limited to the loss of $32,500 in paid funds, production cost, unsuccessful project, consequential damages arising from the disruption and cancellation of its film production, reputational harm within the entertainment industry, all exceeding $75,000 in aggregate.

**Third Cause of Action: Unjust Enrichment (Against Defendant Sheila Legette, Individually and d/b/a Sheila Legette Entertainment)**

11

49. Plaintiff repeats and realleges the allegations set forth above as though fully stated herein.

50. Defendant Legette has been unjustly enriched at Plaintiff's expense, and equity requires that she return the $7,500.00 she wrongfully retained, together with consequential damages.

51. Under New York law, a claim for unjust enrichment arises where
(1) the defendant has been enriched
(2) at the plaintiff's expense, and
(3) equity and good conscience require restitution.

52. The doctrine prevents a party from retaining a benefit that in fairness belongs to another.

53. The purpose of the unjust enrichment doctrine is to prevent one party from profiting at the expense of another in circumstances where no valid contract governs, but where retention of the benefit would be inequitable.

54. Courts applying this principle focus on the fairness of allowing the defendant to keep the funds and whether restitution is required to prevent unjust results.

55. Here, Defendant Legette, acting as the manager and agent of Defendant Fox, directly received from Plaintiff the sum of Seven Thousand Five Hundred Dollars ($7,500.00).

56.     Legette accepted and retained these funds in connection with Fox's engagement for Plaintiff's film project. Yet, Fox failed to perform under the Agreement, and Legette provided no services of independent value to Plaintiff.

57.     Despite repeated demands, Legette has refused to return the funds and continues to unjustly withhold monies belonging to Plaintiff. Permitting her to retain the $7,500.00 would result in unjust enrichment because Plaintiff received no consideration or value in exchange for the payment, and equity dictates restitution.

58.     Accordingly, Defendant Legette is liable to Plaintiff for unjust enrichment in the amount of Seven Thousand Five Hundred Dollars ($7,500.00), together with consequential damages arising from production disruption, reputational harm within the entertainment industry, and associated economic losses exceeding $75,000 in aggregate.

**Fourth Cause of Action: Fraudulent Inducement and Misrepresentation (Against Defendants Vivica A. Fox and Sheila Legette, Jointly and Severally)**

59.     Plaintiff repeats and realleges the allegations set forth above as though fully stated herein.

60.     Defendants Fox and Legette fraudulently induced Plaintiff into paying substantial sums and restructuring its production schedule by

13

making material misrepresentations they never intended to honor. Plaintiff is entitled to compensatory and punitive damages.

61. Under New York law, fraudulent inducement and misrepresentation occur where;

(1) a party knowingly makes a false representation of material fact,

(2) with the intent to deceive and induce reliance,

(3) the other party reasonably relies on the misrepresentation, and

damage result.

62. Fraud is a distinct tort and is actionable even where it arises in the context of a contractual relationship, provided that the misrepresentation is collateral or extraneous to the contract itself.

63. The doctrine protects parties from being deceived into agreements by false assurances. Unlike a mere breach of contract, fraudulent inducement focuses on the defendant's state of mind at the time the promises were made—specifically, whether the defendant ever intended to perform.

64. Where a party enters into an agreement with no intention of fulfilling its obligations, the law recognizes this as an independent tortious wrong justifying both compensatory and punitive damages.

65. Here, Defendants Fox and Legette made repeated assurances to Plaintiff that Fox would appear and perform acting services for Plaintiff's film project pursuant to the September 6, 2024, Booking Agreement.

66. After Fox failed to appear for the scheduled filming in Nigeria, Defendants further represented that Fox would reschedule and perform filming in the United States. At the time these representations were made, Defendants knew that Fox had no intention of performing or made such statements with reckless disregard for the truth and did so to induce Plaintiff's reliance.

67. Plaintiff reasonably relied upon these representations in remitting a total of Thirty-Two Thousand Five Hundred Dollars ($32,500.00) to Defendants, and in materially altering its production schedule to accommodate Fox's supposed availability.

68. Defendants' assurances were not merely broken promises, but calculated misrepresentations designed to obtain Plaintiff's funds without providing any value in return.

69. Accordingly, Defendants Fox and Legette fraudulently induced Plaintiff's reliance, causing damages including at least Thirty-Two Thousand Five Hundred Dollars ($32,500.00), reputational harm, and lost business opportunities, all exceeding $75,000 in aggregate.

70.     Because Defendants acted willfully, maliciously, and with wanton disregard for Plaintiff's rights, Plaintiff is further entitled to punitive damages to punish such misconduct and deter similar fraudulent practices.

**Fifth Cause of Action: Conversion (Against Defendants Vivica A. Fox and Sheila Legette, Jointly and Severally)**

71.     Plaintiff repeats and realleges the allegations set forth above as though fully stated herein.

72.     Defendants Fox and Legette are liable for conversion because they wrongfully exercised dominion and control over Plaintiff's funds, totaling $32,500.00, after failing to perform under the Agreement and refusing to return the monies upon demand.

73.     Under New York law, conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49 (2006).

74.     To establish conversion, a plaintiff must show
(1) ownership or a superior right of possession in identifiable funds or property, and
(2) defendant's unauthorized dominion over such funds to the exclusion of plaintiff's rights. Money may be the subject of conversion when it is specifically identifiable and entrusted for a particular purpose.

16

75. The doctrine of conversion protects against wrongful interference with property rights. Where a defendant receives money for a specific, designated purpose, and instead retains it without authorization or applies it inconsistently with that purpose, conversion lies.

76. Unlike breach of contract, which addresses nonperformance, conversion addresses the wrongful retention and dominion over funds that in equity and law belong to another. Here, Plaintiff remitted Thirty-Two Thousand Five Hundred Dollars ($32,500.00) to Defendants for the specific and designated purpose of securing Fox's acting services in the film *The Return of Omotara Johnson*.

77. The funds were identifiable, transferred in discrete installments, and entrusted solely for Defendants' use in connection with the performance of the Agreement. Defendants failed to perform as promised, did not return the funds despite repeated demands, and instead wrongfully retained the monies for their own benefit.

78. By exercising dominion over Plaintiff's property to the exclusion of Plaintiff's rights, Defendants committed conversion under New York law.

79. As a direct and proximate result of Defendants' conversion, Plaintiff has suffered damages in the amount of no less than Thirty-Two Thousand Five Hundred Dollars ($32,500.00), together with consequential damages

17

arising from reputational harm and production disruption, all exceeding $75,000 in aggregate.

80.     **WHEREFORE**, Plaintiff respectfully demands judgment against Defendants Vivica A. Fox and Sheila Legette, individually and d/b/a Sheila Legette Entertainment, jointly and severally, as follows:

81.     Compensatory damages in the principal sum of Thirty-Two Thousand Five Hundred Dollars ($32,500.00), representing the total amount paid to Defendants, together with statutory pre-judgment and post-judgment interest thereon;

82.     Consequential damages arising from:

83.     Lost production costs and disruption of filming schedule;

84.     Reputational harm within the entertainment industry;

85.     Lost business opportunities and prospective deals;

86.     Punitive damages in an amount sufficient to punish Defendants and deter similar fraudulent, malicious, and willful misconduct in the future;

87.     Fees and costs incurred in connection with this action, to the fullest extent permitted by law; and

88.     Such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

Dated: Woodmere, New York

    September 18, 2025

        /s/ Adam J. Fishbein

Adam J. Fishbein (AF-9508)

Attorney at Law

**Attorney for the Plaintiff**

735 Central Avenue

Woodmere, New York 11598

Telephone: (516) 668-6945

Email: fishbeinadamj@gmail.com

Plaintiff requests trial by jury on all issues so triable.

        /s/ Adam J. Fishbein

Adam J. Fishbein (AF-9508)

20